UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EARL HAYES,

                    Plaintiff,

     -against-

ANTHONY ANNUCCI, Acting Commissioner,
New York State Department of Corrections and
Community Supervision ("DOCCS") and THOMAS
HERZOG, Deputy Commissioner for Program
Services, DOCCS,

                    Defendants.

No. 14-cv-8845 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

     Plaintiff Earl Hayes brings this action *pro se*, pursuant to 42 U.S.C. § 1983, against

Defendants Anthony Annucci, Acting Commissioner of the New York State Department of

Corrections and Community Supervision ("DOCCS") and Thomas Herzog, Deputy

Commissioner for Program Services at DOCCS (collectively, "Defendants").  Plaintiff alleges

Defendants violated his rights under the Eighth and Fourteenth Amendments through actions

resulting in his incarceration at Sing Sing Correctional Facility ("Sing Sing") lasting 17 days

longer than legally proscribed.  Before the Court is Defendants' motion to dismiss Plaintiff's

complaint (ECF No. 27).  For the reasons set forth below, Defendants' motion is GRANTED.

## BACKGROUND[1]

     On February 1, 2013, while incarcerated at Sing Sing, Plaintiff received a memo from the

Inmate Records Coordinator regarding his prior confinement at the Sullivan County Jail

---

[1] The following facts are derived from Plaintiff's complaint (the "Complaint" or ECF No. 1).

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/28/2016

("Sullivan").  (Compl. at II.D.)  Plaintiff observed an issue with regard to whether the time he

spent at Sullivan was credited to his prior incarceration bid or to his current bid at Sing Sing.

(*Id*.)  Plaintiff determined that, as a result of this issue, his conditional release date from Sing

Sing was incorrectly calculated to be July 20, 2014, when it should have been June 8, 2014—a

Sunday, requiring release on June 6, the previous Friday.  (*Id*.)  After determining that his

conditional release date was incorrect, Plaintiff discussed the issue with Offender Rehabilitation

Coordinators, or Correction Counselors, who instructed him to contact the Executive Office in

Albany.  (*Id*.)

       Plaintiff sent a series of letters to Defendants Annucci and Herzog, informing them of the

error and its potential impact on his conditional release date.  (*Id*.)  Defendant Herzog responded

to Plaintiff's letter and indicated to Plaintiff that his conditional release date was correctly

calculated and would not be altered because parole officials who issued Plaintiff's previous

termination of sentence document, "had discretion to terminate Plaintiff's prior sentence

whenever they saw fit."  (*Id*.)  In response, Plaintiff initiated an Article 78 proceeding about the

calculation error, and the state court set a deadline of June 24, 2014 as the reply date.  (*Id*.)  On

June 23, 2014 (one day before the reply date), Sing Sing officials informed Plaintiff that they had

received an email from Albany, which stated that Plaintiff's legal dates had been modified and

that Plaintiff must be released because he was being confined past his conditional release date.

(*Id*.)  That same day, Plaintiff was released from Sing Sing to parole.  (*Id*.)

## MOTION TO DISMISS STANDARD

       "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 566

U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678.  Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010).  A court should accept non-conclusory allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008).  "[T]he duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir. 1998)).

   "*Pro se* complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*." *Thomas v. Westchester*, No. 12–CV–6718 (CS), 2013 WL 3357171 (S.D.N.Y. July 3, 2013); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).  The court should read *pro se* complaints "to raise the strongest arguments that they suggest." *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006).  Even so, "pro se plaintiffs . . . cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (internal quotation marks omitted).  Dismissal is justified where "the complaint lacks an allegation regarding an element necessary to obtain relief," and the "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it." *Geldzahler v. N.Y.*

*Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal citations and alterations omitted).

## DISCUSSION

Interpreted liberally, the Complaint appears to assert violations of Plaintiff's rights under the Fourteenth and Eighth Amendments arising out of Plaintiff's incarceration for 17 days beyond his conditional release date.  The Court will address the merits of each of these claims in turn.

## I.      14th Amendment Claim

The Supreme Court has held that "[t]here is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners."  *Swarthout v. Cooke*, 562 U.S. 216, 220 (2011).  Nevertheless, while there is no inherent federal right to parole, states are able to create a liberty interest that is protected by the Due Process Clause of the Fourteenth Amendment for inmates.  *Id*. at 219–20. *See also Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 7 (1979); *Sandin v. Conner*, 515 U.S. 472, 483–84 (1995) ("States may under certain circumstances create liberty interests which are protected by the Due Process Clause.").  To determine whether the Due Process Clause applies to a state parole system, courts apply a two prong test, in effect asking two questions: First, "whether there exists a liberty or property interest of which a person has been deprived, and if so . . . whether the procedures followed by the State were constitutionally sufficient." *Swarthout*, 562 U.S. at 219 (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

### A.  Liberty Interest in Conditional Release

In general, a protected liberty interest is "created and defined by 'existing rules or understandings that stem from an independent source such as state law.'"  *Danese v. Knox*, 827 F. Supp. 185, 190 (S.D.N.Y. 1993) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)).  "In order for a state prisoner to have an interest in parole that is protected by the Due Process Clause, he must have a legitimate expectancy of release that is grounded in the state's statutory scheme."  *Barna v. Travis*, 239 F.3d 169, 170 (2d Cir. 2001) (citing *Greenholtz*, 442 U.S. at 11–13; *Berard v. Vermont Parole Board*, 730 F.2d 71,75 (2d Cir. 1984); *Boothe v. Hammock*, 605 F.2d 661, 663 (2d Cir. 1979)).  "Neither the mere possibility of release, nor a statistical probability of release, gives rise to legitimate expectancy of release on parole."  *Barna*, 239 F.3d at 171.  *See also Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016) *as amended* (Feb. 24, 2016) ("*Victory*") ("[I]n order to have a protectable liberty interest, a prisoner must have more than a hope or a unilateral expectation of release.  He must, instead, have a legitimate claim of entitlement to it.") (quotations and citations omitted).

Thus far, the Second Circuit has declined to opine on whether New York recognizes a liberty interest in conditional release.  *See Doe v. Simon*, 221 F.3d 137, 139 (2d Cir. 2000) (refraining from "reach[ing] the thorny question of whether a liberty interest exist[s]" in conditional release); *Rosemond v. Menifee*, 137 F. Supp. 2d 270, 274 (S.D.N.Y. 2000) ("whether Penal Law § 70.40(1)(b) creates a constitutionally protected liberty interest in conditional release remains an open question in this Circuit.")  Further, courts in this district confronted with the

issue have either assumed a liberty interest exists[2] or disposed of similar claims on other grounds.[3]

Recently, the Second Circuit was confronted with a somewhat similar issue in *Victory*— whether an inmate granted an open parole release date has a liberty interest in parole. Referencing its earlier decision in *Green v. McCall*, 822 F.2d 284 (2d Cir. 1987), the Second Circuit described a "continuum" of liberty interests in the realm of a prisoner's rights to release. 814 F.3d at 60.  At the high end of the spectrum (i.e., a recognized liberty interest) is the parolee, since "it is well established that his parole may not be revoked without due process." *Id*. (citing *Young v. Harper*, 520 U.S. 143 (1997); *Morrissey v. Brewer*, 408 U.S. 471 (1972)).  Below the parolee is the parole grantee, and below the parole grantee is the inmate without a parole date (nongrantee).  *Id*.  The Second Circuit reasoned that because the Supreme Court held that even a nongrantee may have a liberty interest, a prisoner granted an open parole release date—who has a higher place on the liberty interest spectrum—has a liberty interest entitling him to due process in a rescission hearing.  *Id*.[4]

Extending the Second Circuit's reasoning in *Victory* to the present situation, the Court finds that Plaintiff arguably has a protectable liberty interest in his conditional release. New York Penal Law § 70.40(1)(b) states:

> A person who is serving one or more than one indeterminate or determinate sentence of imprisonment **shall**, if he or she so requests, be conditionally released from the institution

---

[2] *Peterson v. Tomaselli*, 469 F. Supp. 2d 146, 165 (S.D.N.Y. 2007) ("*Peterson*") (determining that even if a liberty interest exists, plaintiff was afforded adequate due process).

[3] *Muhammad v. Evans*, No. 11-cv-2113, 2014 WL 4232496, at *7 (S.D.N.Y. Aug. 15, 2014) (dismissing plaintiff's due process claim on the basis that he sued the wrong individuals).

[4] In *Klos v. Haskell*, the Second Circuit determined that a prisoner's liberty interest was not violated in his removal, without notice, from the prison shock program.  48 F.3d 81, 88 (2d Cir. 1995).  The court noted that the "case falls somewhere between the two sides of [the liberty interest] equation-between denial of a unilateral hope of early conditional release (which does not implicate a liberty interest) and revocation of already granted release status (which does).  *Id*. at 87 (internal quotation and citations omitted).

in which he or she is confined when the total good behavior time allowed to him or her, pursuant to the provisions of the correction law, is equal to the unserved portion of his or her term, maximum term or aggregate maximum term; provided, however, that (i) in no event shall a person serving one or more indeterminate sentence of imprisonment and one or more determinate sentence of imprisonment which run concurrently be conditionally released until serving at least six-sevenths of the determinate term of imprisonment which has the longest unexpired time to run and (ii) in no event shall a person be conditionally released prior to the date on which such person is first eligible for discretionary parole release.

(emphasis added).  While parole rests "in the discretion of the state board of parole," N.Y. Penal Law § 70.40, conditional release from an indeterminate sentence is "a form of automatic parole." N.Y. Penal Law § 70.40 Practice Commentary at 382.  The mandatory language ("shall") in New York Penal Law § 70.40(1)(b) may confer upon Plaintiff a "'legitimate expectancy of release . . . grounded in [New York's] statutory scheme.'"  *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012) (quoting *Barna*, 239 F.3d at 170); *see also Board of Pardons v. Allen*, 482 U.S. 369, 377– 81 (1987) (holding that Montana statute using the language "shall" created a protected liberty interest).  At the same time, Defendants assert, somewhat persuasively, that Plaintiff does not have a legitimate expectancy of conditional release because "any conditional release date is contingent on determination of discretionary good time credit under Correction Law § 803 and subject to satisfying the conditions of parole . . . ."  (Memorandum of Law in Support of the Defendants' Motion to Dismiss, ECF No. 28 at 5.)  While New York Penal Law § 70.40(1)(b) does reference the provisions of the correction law, the Court does not view this as necessarily destroying any potential liberty interest.  Though Plaintiff's place on the liberty interest continuum may not be as high as the plaintiff in *Victory*, it likely is above the nongrantee with a potential liberty interest and does not represent "simply a unilateral hope."  *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465 (1981).  Nevertheless, in light of the absence of Second Circuit authority as to whether New York law creates a liberty interest in conditional release, this

7

Court likewise will refrain from deciding the issue.  In any event, even assuming Plaintiff has a liberty interest in conditional release, the procedures available to Plaintiff were constitutionally sufficient as explained below.

### B.  Sufficiency of State Procedures

"When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees."  *Peterson*, 469 F. Supp. 2d at 165 (citing *Hellenic Am. Neighborhood Action Comm. V. City of N.Y.*, 101 F.3d 877, 880 (2d Cir. 1996) (citations omitted)).  With respect to random, unauthorized acts, a prisoner's due process is not violated "so long as the government provides a meaningful remedy subsequent to deprivation."  *Locurto v. Safir*, 264 F.3d 154, 172 (2d Cir. 2001).[5]  If the claim is based on established state procedures, then "the availability of post-deprivation procedures will not, ipso facto, satisfy due process."  *Hellenic*, 101 F.3d at 880.  Plaintiff's allegations regarding the miscalculation of his conditional release date fall within the ambit of "random, unauthorized acts."[6]  Consequently, Plaintiff "has the burden of demonstrating that no meaningful remedy was available subsequent to his liberty deprivation."  469 F. Supp. 2d at 165–66.

The Second Circuit has held that the availability of an Article 78 proceeding constitutes a meaningful post-deprivation remedy.  *See Schultz v. Egan*, 103 F. App'x 437, 441 (2d Cir. 2004)

---

[5] "The rationale for this principle is plain: because the challenged misconduct is random and unauthorized, it is impossible for the government to anticipate and prevent the wrongful loss of liberty or property in advance, and it has no realistic alternative other than to adopt remedies capable of righting the wrong after the deprivation." *Locurto*, 264 F.3d at 172 (citations omitted).

[6] This case is distinguishable from *Schultz v. Egan*, 103 F. App'x 437 (2d Cir. 2004).  In that case, the plaintiff alleged "that the prison officials do not provide adequate process for addressing inmate complaints about the calculation of their sentences."  103 F. App'x at 441.  Here, however, Plaintiff does not take issue with the sufficiency of the prison's process but rather claims a mistake occurred with respect to the calculation of his respective conditional release date.

(when "random and unauthorized" acts results in a prisoner being held beyond his maximum release date, "the availability of an Article 78 proceeding or a habeas proceeding would almost certainly suffice to satisfy the due process clause.") (collecting cases); *Hellenic*, 101 F.3d at 881 (holding that Article 78 proceeding was adequate post-deprivation remedy for random and arbitrary debarment from city procurements); *Marino v. Ameruso*, 837 F.2d 45, 47 (2d Cir. 1988) (finding that Article 78 proceeding was adequate post-deprivation remedy for random and unauthorized evidentiary ruling by administrative law judge that resulted in termination of public employment).

In the present case, Plaintiff not only had an Article 78 proceeding available to him as recourse for correcting his conditional release date but indeed availed himself of that remedy. (Compl. at II.D.)  In the Article 78 proceeding, the state court set a deadline for June 24, 2014 as the deadline for DOCCS officials to respond to Plaintiff's petition.  (*Id*.)  On June 23, 2014—one day prior for the deadline for DOCCS officials to respond—Plaintiff received an email that his conditional release date was modified and that he would be released that very day.  (*Id*.)  From this, the Court concludes that the state procedures available to Plaintiff were constitutionally sufficient and grants Defendants' motion to dismiss Plaintiff's Due Process claim.

## II.     8th Amendment Claim

The Complaint arguably alleges an Eighth Amendment claim.  The Eighth Amendment forbids the imposition of punishment that is "cruel and unusual."  U.S. Const. amend. VIII.  "To prevail on an Eighth Amendment claim, an inmate must first show that his injury is objectively a 'sufficiently serious' one."  *Brims v. Burdi*, No. 03-cv-3159 (WHP), 2014 WL 1403281, at *2 (S.D.N.Y. June 23, 2004) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).  Additionally, a plaintiff must "show that the defendant had knowledge of [the] prisoner's

problem and was deliberately indifferent to [the] prisoner's plight." *Calhoun v. N.Y. State Div. of Parole Officers*, 999 F.2d 647, 654 (2d Cir. 1993) (citing *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989)).  In the context of miscalculated prison sentences, courts generally have held that a delay of merely a few days beyond expiration of the sentence does not give rise to an Eighth Amendment claim.  *See Calhoun*, 885 F.2d at 654 (holding that "the five-day extension of [the plaintiff's] release date did not inflict a harm of a magnitude that violates a person's eighth amendment rights") (citations omitted); *Brims*, 2014 WL 1403281, at *2 ("extra six days of imprisonment is not a harm of sufficient magnitude to implicate the Eighth Amendment"); *and Lozada v. Warden Downstate Corr. Facility*, No. 10-cv-8425 (RWS), 2012 WL 2402069, at *2 (S.D.N.Y. June 26, 2012) (holding that "additional seven days of incarceration is insufficient to bring an Eighth Amendment claim") *but see Sample*, 885 F.2d at 1110 (detention for ninth months beyond expiration of release date gave rise to eighth amendment violation).

     In the present case, the issue for the Court is whether Plaintiff's incarceration for seventeen days beyond his conditional release date constitutes a sufficiently serious injury to give rise to an Eighth Amendment claim.[7]  At the outset, the Court notes that "[t]he unauthorized incarceration of any individual is abhorrent to our system of justice." *McCants v. Jones*, No. 98-cv-6337 (FE), 1999 WL 804009, at *4 (W.D.N.Y. Sept. 30, 2009).  Nevertheless, "the administration of a justice system that includes prison sentences as punishment 'entails an unavoidable risk of error.'" *Id*. (quoting *Sample*, 885 F.2d at 1108).  Like the plaintiffs in *Brims* and *Calhoun*, Plaintiff "was imprisoned only a few days over his actual release date"; therefore, the Court concludes that "his relatively short deprivation is not sufficiently serious to sustain a

---

[7] The Court assumes for purposes of analysis that Plaintiff properly pled the deliberate indifference prong of an Eighth Amendment claim.

constitutional claim." *Brims*, 2004 WL 1403281, at *2 (citing *Calhoun*, 999 F.2d at 654).[8]  The

Court grants Defendants' motion to dismiss Plaintiff's Eighth Amendment claim.[9]

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.  The Clerk is

directed to terminate the motion at ECF No. 27, enter judgment in favor of Defendants, and close

the case.

Dated:   April 28, 2016
       White Plains, New York

                                   SO ORDERED.

                                  NELSON S. ROMÁN
                            United States District Judge

---

[8] The Court further notes that in *Brims* and *Calhoun*, the plaintiffs were held beyond their *maximum release* dates, not merely a conditional release date.  Even in the context of confinement beyond a maximum release date, those courts determined the Eighth Amendment claims failed.

[9] Having dismissed Plaintiff's claims for violations of the Eighth and Fourteenth Amendments, the Court declines to reach Defendants' remaining arguments in support of dismissal (qualified immunity and lack of personal involvement).